**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

TANDRA M. JARAMILLO,

Plaintiff,

v. CV 15-722 WPL

CAROLYN W. COLVIN,
Acting Commissioner of the
Social Security Administration,

Defendant.

**MEMORANDUM OPINION AND ORDER**

Tandra Jaramillo applied for disability insurance benefits and supplemental security income on January 6, 2010, alleging disability based on severe anxiety that began on June 1, 2002. (Administrative Record "AR" 88-89, 97.) After her applications were denied at all administrative levels, Jaramillo filed her Motion to Reverse and Remand for a Rehearing. (Doc. 20.) The Commissioner of the Social Security Administration ("SSA") filed a response (Doc. 24) and Jaramillo filed a reply (Doc. 25). For the reasons explained below, I grant Jaramillo's motion to remand and remand this case to the SSA for further proceedings consistent with this opinion.

**STANDARD OF REVIEW**

When the Appeals Council denies a claimant's request for review, the Administrative Law Judge's ("ALJ") decision is the SSA's final decision. In reviewing the ALJ's decision, I must determine whether it is supported by substantial evidence in the record and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation omitted). A decision is not based on substantial evidence if other evidence in the record overwhelms it or if there is a mere scintilla of evidence supporting it. *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). Substantial evidence does not, however, require a preponderance of the evidence. *U.S. Cellular Tel. of Greater Tulsa, L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003). I must meticulously examine the record, but I may neither reweigh the evidence nor substitute my discretion for that of the Commissioner. *Hamlin*, 365 F.3d at 1214. The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show us that []he has done so . . . ." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

**SEQUENTIAL EVALUATION PROCESS**

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). If a finding of disability or nondisability is directed at any point, the ALJ will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). The ALJ then determines the physical and mental demands of the claimant's past relevant work in phase two of the fourth step and, in the third phase, compares the claimant's RFC with the functional requirements of her past

relevant work to see if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). If the claimant cannot return to her past work, then the Commissioner bears the burden, at the fifth step, of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## FACTUAL BACKGROUND

Jaramillo is a forty-three-year-old woman with a ninth- or tenth-grade education. (AR 49, 506.) She previously worked as a caregiver at various home health care companies, as a room cleaner at a hotel, and as a cashier. (AR 305.) Jaramillo claims disability beginning on June 1, 2002, based on severe anxiety. (AR 89, 97.) For purposes of her disability insurance benefits claim, Jaramillo's date last insured was December 31, 2003. (AR 89, 271.)

I do not address everything in the record, but rather target my discussion to the facts necessary to the disposition of this case.

Jaramillo filled out a Disability Report on January 11, 2010, and stated that she earned her GED in the late 1990s and never attended special education classes. (AR 276.) A case analysis filled out by state agency physician Eileen M. Brady, M.D., on October 8, 2010, notes that Jaramillo failed to attend two consultative psychological examinations and did not return requested reports. (AR 505.)

On October 28, 2010, Daniel Hendricks, Ph.D., saw Jaramillo for a consultative psychological examination. (AR 506.) Dr. Hendricks reviewed two unspecified reports in Jaramillo's file and conducted a two hour psychological evaluation. (*Id.*) Jaramillo reported that she was unable to work because of her anxiety, completed the tenth grade, and was never in special education classes. (*Id.*) Based on Jaramillo's reports, Dr. Hendricks wrote that "[s]he appears to give an accurate account of her life being controlled by anxiety. She only leaves the house when she has to. She only shops when the stores are not crowded." (AR 507.) Dr. Hendricks also noted that Jaramillo was adequately dressed and groomed, and was cooperative and pleasant. (*Id.*) Though she "appeared quite anxious and tense," Jaramillo relaxed through the interview and expressed a full range of emotions. (*Id.*) Dr. Hendricks found that Jaramillo's memory was intact, she was oriented and able to do abstractions, though she was not able to do serial 7s or serial 3s, and Jaramillo is in the borderline to low-average range of intelligence. (AR 508.) Dr. Hendricks diagnosed Jaramillo with a panic disorder with agoraphobia and assessed her with a GAF of 41.[1] (*Id.*) Finally, Dr. Hendricks noted that Jaramillo appeared to have overwhelming anxiety, would benefit from treatment, experienced concentration and focus problems, and would have difficulty interacting with males. (*Id.*)

On November 26, 2010, nonexamining state agency physician Charles Mellon, M.D., reviewed Jaramillo's file and filled out a Mental RFC Assessment form. (AR 512.) For Section I, "Summary Conclusions," the form stated:

[1] The GAF is "a hypothetical continuum of mental health-illness" assessed through consideration of psychological, social, and occupational functioning. Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders: DSM-IV-TR* 34 (4th ed., text rev. 2005). A score between forty-one and fifty is assessed when the patient is believed to have "[s]erious symptoms . . . OR any serious impairment in social, occupational, or school functioning." *Id.* Although the fifth edition of the *DSM* dropped the GAF rating in 2013 in favor of an alternative assessment schedule, Jaramillo's mental health providers used this scoring method.

> This section is for recording summary conclusions derived from the evidence in file. Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis. Detailed explanation of the degree of limitation for each category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment).

(*Id.*) Dr. Mellon indicated that Jaramillo experienced moderate limitations in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with others without being distracted by them; ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; ability to be aware of normal hazards and take appropriate precautions; ability to travel to unfamiliar places or use public transportation; and ability to set realistic goals or make plans independently of others. (AR 512-13.)

At Section III, Functional Capacity Assessment, the form instructed Dr. Mellon to:

> Record the elaborations on the preceding capacities in this section. Complete this section ONLY after the SUMMARY CONCLUSIONS section has been completed. Explain your summary conclusions in narrative form. Include any information which clarifies limitation or function. Be especially careful to explain conclusions that differ from those of treating medical sources or from the individual's allegations.

(AR 514.) Dr. Mellon wrote that Jaramillo "can understand, remember and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors and respond appropriately to changes [in] a routine work setting." (*Id.*)

At an administrative hearing with the ALJ on July 9, 2013, Jaramillo appeared by telephone. (AR 47.) She testified that she had a ninth grade education and no GED, and was in "Special E" reading classes in school. (AR 49-50.) Jaramillo stated several times that she only feels safe at home, that she does not like to leave her house, and that her conditions worsened in March 2011. (AR 51-53, 58.) Jaramillo testified that, in addition to her mental condition, she experiences back pain and leg pain, but that she has not sought treatment for these ailments and manages her condition with over the counter medication. (AR 55.)

The ALJ referred Jaramillo for a second consultative psychological examination. Jaramillo received a Notice of Disability Examination dated July 12, 2013, that stated, in the middle of the cover page, that "FAILURE TO ATTEND THIS EXAM WILL LIKELY RESULT IN A DENIAL OF YOUR CASE DUE TO YOUR FAILURE TO COOPERATE." (AR 343.) Jaramillo did not attend the examination. (AR 341.)

**THE ALJ AND APPEALS COUNCIL'S DECISIONS**

The ALJ issued his decision on September 24, 2013. (AR 14.) The ALJ noted that, for the disability insurance benefits application, Jaramillo's date last insured was December 31, 2003. (AR 19.) He found that Jaramillo had not engaged in substantial gainful activity since June 1, 2002, her alleged onset date. (*Id.*) The ALJ found that Jaramillo suffered the severe impairment of an anxiety disorder with panic attacks and agoraphobia, but that her medically determinable

impairments—or any combination thereof—do not meet or equal a Listing of Impairment. (AR 20.)

The ALJ determined that Jaramillo has the RFC for a full range of work at all exertional levels, but is limited to simple, routine, repetitive, unskilled tasks performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, and with no interaction with the general public. (AR 21.) In support of this determination, the ALJ reviewed the medical evidence and noted that Jaramillo seemed to go long periods of time without any treatments, but would appear "whenever she needs paperwork done for Social Services." (AR 22.) The ALJ noted that Jaramillo reported being "quite functional" in July 2008. (AR 24.) He then reviewed the hearing testimony and pointed out several discrepancies between Jaramillo's testimony and the record: notably, her educational background. (AR 27-28.) Based on these discrepancies, the ALJ found that Jaramillo was not totally credible. (AR 28.) He then emphasized that Jaramillo failed to attend the scheduled consultative psychological examination and had received no medical care since July 2010. (AR 28-29).

The ALJ accorded little weight to Dr. Hendricks's opinion "because [he found] it likely that Dr. Hendricks relied quite heavily on the subjective report of symptoms and limitations provided by [Jaramillo], and seemed to uncritically accept as true most, if not all, of what [Jaramillo] reported." (AR 30.) The ALJ also noted that he had previously explained his reasons for questioning Jaramillo's credibility. (*Id.*) The ALJ then accorded "some weight" to the nonexamining state agency physicians, including Dr. Mellon, as their opinions are consistent with the record as a whole. (*Id.*)

The ALJ then found that Jaramillo could not perform her past relevant work, but would be able to perform other work in the economy and was not disabled under the framework of section 204.00 of the Medical-Vocational Guidelines. (AR 31.)

## DISCUSSION

Jaramillo argues that the ALJ erred at various points in step four. Specifically, she alleges that the ALJ failed to meet his duty to develop the record by not asking Jaramillo how back pain affects her ability to function from a physical standpoint; improperly characterized the evidence when conducting his credibility determination, rendering the determination unsupported by substantial evidence; failed to appropriately weigh Dr. Hendricks's opinion as an examining physician; improperly addressed the opinions of non-examining state agency physicians, specifically by relying on Section III of the Mental RFC Assessments and ignoring moderate limitations noted in Section I of the Assessments; failed to adequately account for Dr. Hendricks's opinion when formulating the RFC; and failed to include limitations related to back pain or obesity in the RFC, and specifically failed to discuss the physical requirements of medium work. Because I find that the ALJ erred as a matter of law in his handling of nonexamining psychologist Dr. Mellon's opinion, I do not reach all of Jaramillo's claims of error.

### I. Duty to Develop the Record

Jaramillo argues that the ALJ failed to adequately develop the record at the hearing by not asking Jaramillo how her back pain impacts her physical capacities. She argues that the ALJ was on notice of the allegations of back pain, scoliosis, and obesity, and failed to inquire into these areas.

Because a social security disability hearing is a nonadversarial proceeding, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993); *see also Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006). The ALJ's "basic duty of inquiry" requires him "'to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts.'" *Dixon v. Heckler*, 811 F.2d 506, 510 (10th Cir. 1987) (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983) (Brennan, J., concurring)). This duty is "heightened" when the claimant is not represented by an attorney. *Madrid*, 447 F.3d at 790. To trigger the duty of inquiry, "the claimant has the burden to make sure there is, in the record, evidence sufficient to suggest a reasonable possibility that a severe impairment exists." *Hawkins v. Chater*, 113 F.3d 1162, 1167 (10th Cir. 1997) (citations omitted). While "[t]he duty of inquiry takes on a special urgency when the claimant . . . is unrepresented by counsel," *Dixon*, 811 at 510, the ALJ is not required to "exhaust every potential line of questioning," *Glass v. Shalala*, 43 F.3d 1392, 1396 (10th Cir. 1994).

Jaramillo does not allege that the ALJ should have ordered an additional consultative examination, but rather that the ALJ should have asked Jaramillo about her physical conditions at the hearing. The ALJ did, indeed, hear from Jaramillo about her physical conditions. Jaramillo stated that, other than her mental condition, she experiences pain in her back that is "just a pain that's always there, a soreness." (AR 55.) She stated that her back pain started about three years ago, and that she also has pain in her legs, but has not had either condition examined: she takes over the counter pain medication to manage her symptoms. (*Id.*) The ALJ asked Jaramillo if she wanted to tell the ALJ anything else about her conditions; she declined. (AR 64.) Finally, at the

end of the hearing, the ALJ again asked Jaramillo if she wanted to say anything else, and Jaramillo again declined. (AR 71-72.)

Again, the ALJ is not required to "exhaust every potential line of questioning," *Glass*, 43 F.3d at 1396, but rather "to inform himself about facts relevant to his decision and to learn the claimant's own version of those facts," *Dixon*, 881 F.2d at 510 (quotation omitted). The ALJ did this. He spoke with Jaramillo about her back pain, learned that she has not sought treatment and manages her condition with over the counter medications, and then gave her an opportunity to speak freely about her conditions. The ALJ is not required to represent Jaramillo. The ALJ adequately developed the record and did not commit reversible error on this point.

**II. Credibility Determination**

Jaramillo next makes a somewhat passing argument that the ALJ erred in his credibility determination. Jaramillo specifically challenges the ALJ's assumption that Jaramillo did not attend the July 22, 2013, consultative examination because she "did not consider this appointment to be something that she had to attend" (Doc. 20 at 21 (quoting AR 28-29)); the ALJ's reliance on Jaramillo's reluctance to take medication or try therapy; and the ALJ's failure to put several inconsistencies in the record in context.

When the objective medical evidence in a case does not, on its own, direct a determination of disability, the ALJ must consider the claimant's symptoms and credibility of her subjective reports, in light of the entire record. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (July 2, 1996).[2] A claimant's symptoms, including pain, will diminish her RFC "to the extent that the individual's alleged functional limitations and restrictions due to

[2] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 40235; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the case record." *Id.* at *2. "An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on [her] . . . ability to work may not be disregarded solely because they are not substantiated by objective medical evidence." *Id.* at *1. When assessing the credibility of an individual's statements about his symptoms, the ALJ must consider:

1. The individual's daily activities;
2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
3. Factors that precipitate and aggravate the symptoms;
4. The type, dosage, effectiveness, and side effects of any medication that the individual takes or has taken to alleviate pain or other symptoms;
5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms . . . ; and
7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.*; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ is required to consider all of the evidence, but is not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). "Credibility determinations are peculiarly the province of the finder of fact . . . and [should be upheld if they are] supported by substantial evidence." *Winfrey*, 92 F.3d at 1020.

While Jaramillo may be correct that the evidence of record lends itself to an additional interpretation—namely, that Jaramillo's mental impairment or anxiety worsened over time and ultimately prohibited her from attending a psychological evaluation—the evidence also reasonably supports the ALJ's determination. Jaramillo's claims of error, even if true, do not render the ALJ's credibility determination unsupported by substantial evidence or a reversible error of law. Jaramillo did, indeed, make conflicting statements in the record about her level of

education and whether she was in special education classes (*compare* AR 49-50 *with* AR 276; *see* AR 28); she did report being quite functional in July 2008, even though she says that her symptoms worsened in March 2011 (*compare* AR 449 *with* AR 53, 58; *see* AR 24, 27-28); and she did fail to attend the July 2013 psychological evaluation, which she was specifically warned could result in an adverse inference (AR 343), even though that failure could be attributed to worsening symptoms or to simple noncompliance (AR 28). The ALJ addressed all of this evidence in his decision and found Jaramillo to be not entirely credible. While the evidence could be interpreted differently, I cannot say that the ALJ's credibility determination is unsupported by substantial evidence. Accordingly, the ALJ did not err as Jaramillo suggests. *See Winfrey*, 92 F.3d at 1020.

**III. Medical Opinions**

Jaramillo makes several arguments with regard to the ALJ's treatment of medical source opinions. First, Jaramillo contends that the ALJ failed to appropriately weigh Dr. Hendricks's opinion and offered an illegitimate reason for rejecting Dr. Hendricks's findings and opinion. Second, Jaramillo argues that the ALJ relied on Mental RFC Assessments completed by state agency physicians, but improperly rejected—without explanation—moderate limitations contained in those forms. Finally, Jaramillo claims that the ALJ improperly accorded more weight to the opinion of nonexamining state agency physicians over the opinion of an examining source, Dr. Hendricks.

Relevant to the ALJ's treatment of all of the medical opinions in the record are the factors in 20 C.F.R. §§ 404.1527(c) and 416.927(c), which are applied in determining the weight to accord the opinions of non-treating physicians. The parties agree that none of the medical opinions at issue come from treating physicians. These factors include: 1) the nature and extent

of the treatment relationship, 2) the degree to which the opinion is supported by other evidence of record, 3) consistency between the opinion and the record as a whole, 4) whether the physician is a specialist in the area upon which an opinion is rendered, and 5) other factors brought to the ALJ's attention which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c).

Jaramillo contends that the ALJ failed to appropriately weigh Dr. Hendricks's opinion for two reasons: the ALJ's proffered reason for assigned the opinion little weight was not legitimate and the ALJ substituted his own opinion for that of the expert witness. The ALJ accorded Dr. Hendricks's opinion little weight because the ALJ found it "likely that Dr. Hendricks relied quite heavily on the subjective report of symptoms and limitations provided by [Jaramillo], and seemed to uncritically accept as true most, if not all, of what [Jaramillo] reported" and because the ALJ appropriately questioned Jaramillo's credibility. (AR 30.)

"[A] psychological opinion may rest either on observed signs and symptoms or on psychological tests." *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004). Here, Dr. Hendricks did not perform any psychological tests, but did review two unspecified reports and conduct a two hour psychological evaluation with Jaramillo, including a mental status evaluation. (*See* AR 506.) Accordingly, Dr. Hendricks's conclusions appear to be based on his observations of Jaramillo and on Jaramillo's reports.

Jaramillo argues that the ALJ's credibility determination should not bear on his assignment of weight to Dr. Hendricks's opinion because Dr. Hendricks is a professional with trustworthy judgment. However, the factors outlined in the regulations allow, and even direct, the ALJ to consider "any factors [the claimant] or others bring[s] to [the ALJ's] attention, or of which [the ALJ is] aware, which tend to support or contradict the opinion." 20 C.F.R.

§§ 404.1527(c), 416.927(c). Therefore, the ALJ's proffered reason for assigning little weight to Dr. Hendricks's opinion is legitimate.

Additionally, the ALJ's statement that it is "'likely' that Dr. Hendricks relied on Ms. Jaramillo's report of symptoms" is not an impermissible substitution of the ALJ's opinion for that of an expert witness. (Doc. 20 at 11.) Jaramillo provides no explanation for how the ALJ impermissibly came to a medical conclusion and substituted his opinion for that of Dr. Hendricks. This argument is without merit and the ALJ did not err.

Next, Jaramillo claims that the ALJ relied on Mental RFC Assessments completed by state agency physicians, but improperly rejected—without explanation—moderate limitations contained in those forms, specifically the Mental RFC Assessment filled out by Dr. Mellon. In relevant part, Dr. Mellon noted that Jaramillo had moderate limitations in the following areas: ability to understand and remember detailed instructions; ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; ability to sustain an ordinary routine without special supervision; ability to work in coordination with others without being distracted by them; ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; ability to interact appropriately with the general public; ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; ability to respond appropriately to changes in the work setting; ability to be aware of normal hazards and take

appropriate precautions; ability to travel to unfamiliar places or use public transportation; and ability to set realistic goals or make plans independently of others. (AR 512-13.) Many of these restrictions are not accounted for in the ALJ's RFC assessment, including the limitations on Jaramillo's ability to concentrate for extended periods, accept instruction or criticism from supervisors, or get along with coworkers or peers. (*Compare* AR 512-13 *with* AR 22.)

Jaramillo cites to *Leiva v. Colvin*, CV 15-40 SMV (Memorandum Opinion and Order, ECF 26) (D.N.M. Feb. 17, 2016) (unpublished), for the proposition that a nonexamining physician's notations in Section I of a Mental RFC Assessment form contain the actual restrictions, and Section III provides additional explanation as needed. The Commissioner argues that the ALJ "accounted for the psychologists' opinions by relying on their specific opinions, at the conclusion of their reports, that [Jaramillo] was capable of simple, but not complex, instructions." (Doc. 24 at 9 (citations omitted).)

Although the Commissioner did not have the benefit of this case, the Tenth Circuit recently addressed a similar issue in *Smith v. Colvin*, No. 15-224, --- F.3d --- (10th Cir. May 9, 2016). In *Smith*, a nonexamining psychologist opined that the claimant had several moderate nonexertional limitations and indicated as such on a form. *Id.* at *8. The form instructed the nonexamining psychologist to "assess the residual functional capacity in a narrative" and explained that the questions were "only an aid to assess [claimant's] capacity." *Id.* at n.1. The ALJ followed the narrative discussion, but did not include in the RFC several of the noted moderate limitations. The *Smith* court found that the ALJ did not err, in part because the nonexamining physician's opinion of the claimant's ability to work was found in the narrative assessment, not in the notation of moderate limitations. *Id.* at 8-9.

*Smith* can be contrasted with *Leiva*. In *Leiva*, the court found unpersuasive the Commissioner's argument that ALJ's could, essentially, ignore findings recorded in Section I of a Mental RFC Assessment and instead rely on Section III of the assessment. CV 15-40 SMV, ECF 26 at 10-11. The instructions on the form at issue in *Leiva* stated that Section I

> is for recording summary conclusions derived from the evidence in file. Each mental activity is to be evaluated within the context of the individual's capacity to sustain that activity over a normal workday and workweek, on an ongoing basis. Detailed explanation of the degree of limitation for each Category (A through D), as well as any other assessment information you deem appropriate, is to be recorded in Section III (Functional Capacity Assessment).

*Id.* at 11 (quotation omitted). The instructions for Section III directed the nonexamining physician to complete that Section only after completing Section I and to explain the summary conclusions in narrative form. *Id.* The court thus found Section I to contain "the actual restrictions concerning mental capacity found by the reviewer, and Section III provides additional explanation and clarification but does not negate the Section I restrictions." *Id.* at 12.

The form in this case contains language identical to the form at issue in *Leiva*. Unlike *Smith*, the Mental RFC Assessment form directs the reviewer to fill out Section I and to use Section III to elaborate, rather than using Section III as the entire RFC assessment of the reviewer.

An ALJ may not "turn a blind eye" to a doctor's assessment of moderate limitations. *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished). Here, the ALJ was required either to adopt Dr. Mellon's opinion such that his findings were reflected in the RFC assessment or reject the opinion—or any part of the opinion—and explain the reasons for doing so. *See* SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012); 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii). The RFC assessment does not reflect all of Dr. Mellon's assessed limitations, and the ALJ did not explain

why he rejected some of them. Therefore, I find that the ALJ did not apply the correct legal standards in evaluating Dr. Mellon's opinion. *See Frantz v. Astrue*, 509 F.3d 1299, 1302-03 (10th Cir. 2007). Remand is therefore required.

## CONCLUSION

As explained above, the ALJ adequately developed the record and appropriately assigned lesser weight to Dr. Hendricks's opinion, but erred as a matter of law by failing to account for the moderate limitations in Dr. Mellon's opinion or explain why those limitations were rejected. On remand, the ALJ will either incorporate all of the moderate limitations imposed by Dr. Mellon, or will adequately discuss and explain those limitations he rejects.

It is so ordered.

William P. Lynch
United States Magistrate Judge

A true copy of this order was served on the date of entry--via mail or electronic means--to counsel of record and any pro se party as they are shown on the Court's docket.